**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| MARY HILL, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>ALLEN SIMMONS and UNION )<br>PACIFIC RAILROAD COMPANY, )<br>)<br>Defendants. ) | Case No. CIV-12-211-KEW |

**OPINION AND ORDER**

This matter comes before the Court on Defendants' Motions for Judgment on the Pleadings filed April 29, 2013 (Docket Entry Nos. 34 and 35). On April 12, 2012, Plaintiff brought this action in the District Court in and for Muskogee County, Oklahoma. The case was removed by Defendants to this Court on May 10, 2012. By Opinion and Order entered on March 26, 2013, this Court determined that Plaintiff's allegations were factually and, by extension, legally deficient with regard to the remaining claims sounding in negligence and 42 U.S.C. § 1983. Plaintiff was, however, given an opportunity to amend her Complaint which she accomplished on April 10, 2013.

In her Amended Complaint, Plaintiff has expanded the allegations and claims to some 37 pages. As in the original state court Petition, Plaintiff alleges that on May 27, 2010, Defendant Allan Simmons ("Simmons"), a police officer for and an employee of Defendant Union Pacific Railroad ("Union Pacific"), encountered her when she was allegedly crossing property Simmons was unsure was owned by Union Pacific. Plaintiff contends Simmons' jurisdiction

did not extend beyond the property owned by Union Pacific or the easements granted to Union Pacific. Plaintiff asserts that Union Pacific inadequately trained Simmons in the extent of his jurisdiction. Plaintiff concludes that she was not on Union Pacific property at the time of the incident which gave rise to the allegations in this action.

Prior to the date of the incident, Plaintiff alleges she had received permission from employees of Union Pacific to cross the railroad track where the incident occurred in order to go to work and return home. Plaintiff contends Union Pacific failed to properly educate, train, or supervise its employees on the authority they may give to non-employees to cross Union Pacific property. Plaintiff states Union Pacific was negligent in these deficiencies. Plaintiff further alleges that the encounter occurred on a roadway owned and maintained by the City of Muskogee and is located near the subject railroad track.

Plaintiff states Simmons never identified himself as a police officer. Simmons told Plaintiff she was trespassing on Union Pacific property. Plaintiff verbally challenged Simmons' representation that she was trespassing. But Plaintiff alleges Simmons also told her he would not issue her a citation and never told her she was under arrest or not free to leave.

Plaintiff alleges Simmons failed to follow his training to maintain a distance between himself and Plaintiff or tell Plaintiff to maintain a distance, causing Simmons to become "unnecessarily

2

alarmed." Simmons then, without permission, proceeded to attack Plaintiff by grabbing onto her person and throwing her up against the vehicle owned by Union Pacific. Simmons allegedly choked Plaintiff by placing his hand around her throat and squeezed with sufficient force to restrict her airflow. Simmons allegedly threw Plaintiff to the ground and continued to physically attack her until he handcuffed her. Plaintiff alleges her shirt and bra became dislodged and lifted above her breasts, exposing her to the passing public.

Simmons arrested Plaintiff for trespass, assault and battery on a police officer, and resisting arrest. He booked Plaintiff into the Muskogee County Jail. Plaintiff alleges Simmons lied in his report and brought knowingly false charges which resulted in Plaintiff's prosecution. Plaintiff alleges that witnesses reported Simmons was assaulting Plaintiff and that she needed assistance. Plaintiff was found not guilty of the charges brought against her.

Plaintiff alleges Union Pacific and Simmons repeatedly encouraged, tolerated, ratified, and acquiesced to a dangerous environment of police brutality by:

    a. failing to conduct and/or participate insufficient training order supervision with respect to the constitutional limitations on the use of force;

    b. failing to adequately punish unconstitutional uses a force;

    c. tolerating use of unconstitutional force;

    d. repeatedly and with indifference failing to properly and/or neutrally investigate citizen complaints of excessive force; and

    e. tolerating, encouraging, permitting, or otherwise authorizing fraudulent statements by officers in situations involving unconstitutional use of force.

Plaintiff alleges Union Pacific has a custom, habit, practice, and/or policy to permit its officers to use excessive force and failed to train and supervise its officers in the appropriate constitutional limits on the use of force. Plaintiff asserts Simmons has a "checkered past" as an officer while in the employ of Union Pacific where he has violated the constitutional rights of citizens resulting in civil lawsuits which were settled in an effort to conceal Simmons' conduct.

Plaintiff contends Union Pacific has a history of condoning and/or ratifying the excessive use of force by its officers and the violation of citizens' constitutional rights. Plaintiff alleges Union Pacific knew or should have known that Simmons posed a significant risk to the public and should have taken corrective action to prevent the future use of unconstitutional force.

Plaintiff also asserts Union Pacific is deliberately indifferent to discrimination of citizens by their officers on the basis of sex. Plaintiff contends Union Pacific's officers engage in sex-based law enforcement actions and Union Pacific does not punish its officers for doing so.

Plaintiff states in the Amended Complaint that Simmons and Union Pacific have repeatedly encouraged, tolerated, ratified, and acquiesced in police retaliation against citizens for exercising their First Amendment constitutional rights.

Plaintiff also asserts Union Pacific and Simmons encouraged, tolerated, ratified, and acquiesced in malicious prosecutions by covering up police misconduct and accepting police accounts of events without questioning their accuracy.

Plaintiff sets forth nine separate claims for relief against one or both Defendants identified as follows:

- First Claim for Relief – Negligence (against both Defendants)
- Second Claim for Relief – Gross Negligence (against both Defendants)
- Third Claim for Relief – False Imprisonment and/or False Arrest (against both Defendants)
- Fourth Claim for Relief – Section 1983 Excessive Force in Violation of the Fourth and Fourteenth Amendments (against both Defendants)
- Fifth Claim for Relief – Section 1983 Retaliation in Violation of the First Amendment (against both Defendants)
- Sixth Claim for Relief – Section 1983 Malicious Prosecution in Violation of the Fourth and Fourteenth Amendments (against both Defendants)
- Seventh Claim for Relief – Section 1983 Deliberately Indifferent Policies, Practices, Customs, Training, and

Supervision in Violation of the Fourth, Fourteenth, and First Amendments (against Union Pacific)

- Eighth Claim for Relief – Negligent Hiring and Supervision of Defendant Simmons (against Union Pacific)
- Ninth Claim for Relief – Respondeat Superior (against Union Pacific).

Both parties have referenced and encouraged this Court to review the video recording from Simmons' dash camera. The disc was appended to the Amended Complaint as an exhibit and, therefore, does not constitute outside evidentiary material. This Court has reviewed the video and will set forth its observations.

The camera was pointed toward the railroad crossing where various vehicles are crossing the tracks while traveling on the roadway. Out of view of the camera, Simmons exits his vehicle. The audio records the car door slamming. The exterior of the vehicle is not shown on the video so it is unclear whether the unit was marked or was equipped with flashing lights. The audio reveals Simmons stopping Plaintiff and requesting she go to his unit. Simmons informs Plaintiff that she is trespassing as she walked across the tracks. Plaintiff engages in a verbal challenge to Simmons' characterization of her action of walking across the tracks as trespassing, repeatedly stating "it ain't against the law" as long as a train is not present. Plaintiff continues with a sharp argumentative discussion concerning her right to cross the tracks to get to and from her work.

6

Simmons is then heard to state that he is not giving Plaintiff a ticket. While Simmons contends in his Motion that he stated "you slapped me," the video does not visually show Plaintiff slapping Simmons. With some suddenness, Plaintiff appears in the video for the first time. Simmons' hands are seen entering the frame and grabbing the collar around Plaintiff's shirt, stretching it around her shoulders. Simmons then enters the picture, turning Plaintiff toward his unit and pushing her back into the unit while maintaining his grip. Plaintiff uses her hands to fend off Simmons while he gritted his teeth and appears to pull his arm and fist back without striking Plaintiff. Simmons repeatedly yells for Plaintiff to stop while she repeatedly states that she was not doing anything. Simmons eventually is seen to take Plaintiff to the ground, back first. While the heated verbal exchange continues to be recorded on the video, none of the further actions of either Simmons or Plaintiff is visually recorded.

Plaintiff is heard to tell Simmons to "call the law." Around this time, a third party passerby apparently challenged Simmons' actions, stating that maybe they wouldn't have to cross the tracks at that point if the railroad didn't park the train over the tracks four to five hours per day, forcing them to walk around the train.

Simmons then tells Plaintiff to have a seat in the unit but she apparently resisted turning into the back seat of the unit. Plaintiff repeatedly states that she did not trust Simmons, that she didn't know what he might do if she entered the unit, that he

7

might be a rapist, and that she would not turn in the seat to allow him to drive off with her.

It should be noted that when Simmons appears in the video, he is wearing a tan polo-type shirt with an embroidered badge over the left breast and a dark brown baseball-type hat with what appears to be an arrow head patch on the front.

After a fashion, a Muskogee Police Department unit arrives on scene. The Muskogee police officer insists that Plaintiff enter Simmons unit and the door is heard closing. Little is said in Simmons' unit while Plaintiff is transported to the Muskogee jail.

Both Defendants bring their motions based in Fed. R. Civ. P. 12(c) for judgment on the pleadings. In assessing a request for judgment on the pleadings, the court is required to "accept all facts pleaded by the non-moving party as true and grant all reasonable inferences from the pleadings" in that party's favor. Sanders v. Mountain America Federal Credit Union, 689 F.3d 1138, 1141 (10th Cir. 2012) quoting Park Univ. Enters., Inc. v. Am. Cas. Co., 442 F.3d 1239, 1244 (10th Cir. 2006)(negative history reported on other point of law). Judgment on the pleadings is appropriate only when "the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law." Id. (quotations omitted).

Generally, "a motion for judgment on the pleadings under Rule 12(c) is treated as a motion to dismiss under Rule 12(b)(6)."

Atlantic Richfield Co. v. Farm Credit Bank of Wichita, 226 F.3d 1138, 1160 (10th Cir. 2000). The distinction is drawn only in the timing of the filing - a motion for judgment on the pleadings is filed if an answer has already been filed while a motion to dismiss is filed before a defendant has answered. Fed. R. Civ. P. 12(c). As a result, Plaintiff's Amended Complaint must meet the plausibility standard set forth in United States Supreme Court cases of Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, 556 U.S. 662 (2009). Bell Atlantic stands for the summarized proposition that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) quoting Bell Atlantic, 550 U.S. at 570.

The Tenth Circuit has interpreted the plausibility standard as referring "to the scope of the allegations in the complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008). The Bell Atlantic case, however, did not intend the end of the more lenient pleading requirements of Fed. R. Civ. P. 8(a)(2). Khalik, 671 F.3d at 1191. Rather, in Khalik, the Tenth Circuit recognized the United States Supreme Court's continued endorsement of Rule 8's "short and plain statement" requirement in the case of Erickson v. Pardus, 551 U.S.

89 (2007) wherein the Supreme Court found "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Id. at 93.

Union Pacific first asserts that Plaintiff's Third Claim for false imprisonment and false arrest is barred by the applicable statute of limitations. Plaintiff responds that she intends to dismiss this Third Claim contained in the Amended Complaint. Since she has not already done so, this Court finds Union Pacific's argument confessed and will dismiss this claim.

Union Pacific next contends that Plaintiff attempts to confer liability upon it under a theory of *respondeat superior* and that theory is not cognizable under 42 U.S.C. § 1983. It is well-settled law that a municipality cannot be held liable under § 1983 based solely upon the fact it employs a tortfeasor. Monell v. Dept. of Social Servs. of City of New York, 436 U.S. 658, 691 (1978). Rather, to prevail on a claim against Union Pacific, Plaintiff must demonstrate that it maintained a custom or policy with its police officers which is causally linked to Plaintiff's alleged constitutional deprivations. City of Oklahoma City v. Tuttle, 471 U.S. 808, 818 (1985). More specifically, Plaintiff must allege that the policy was a moving force behind the injury alleged, that the municipality took official action with a requisite degree of culpability and the causal link exists between the action and deprivation of federal rights. Board of County

10

Commissioners v. Brown, 520 U.S. 397, 404 (1997). Plaintiff has plead a sufficiently plausible claim that more than one custom, policy, or practice of Union Pacific lead to a constitutional deprivation beyond mere *respondeat superior* allegations. By including allegations of past actions by Simmons wherein he allegedly deprived a citizen of federal rights, Plaintiff has overcome the initial burden to allege facts which support a claim of municipal liability.

Moreover, this Court must disagree with Union Pacific's assessment of the video evidence accompanying the Amended Complaint. At this stage of the proceedings, the depiction in the video supports a claim that the force employed by Simmons under the circumstances could objectively be deemed excessive. The mere fact Simmons is heard to be said "you slapped me" does not preclude a finding by a jury that his actions in either arresting Plaintiff or utilizing the level of force he used were not constitutionally justified under the circumstances. Union Pacific's statement that Simmons acted "professionally" is a subjective evaluation of his conduct not an appropriate legal conclusion which requires the entry of judgment in Union Pacific's favor on the current Motion.

Union Pacific also seeks dismissal of the negligence and gross negligence claims. In this Court's prior Opinion and Order regarding the negligence claims, Plaintiff's initial pleading was found to lack any statements which supported negligent conduct as most if not all of the allegations reflected solely intentional

11

conduct.  Plaintiff has added alternative allegations concerning the possibility Union Pacific's actions were negligent rather than intentional.  While this Court remains somewhat dubious of the viability of this claim, Plaintiff has sufficiently plead a plausible claim for negligence and gross negligence to survive the Twombly requirements, taking the allegations in a light most favorable to Plaintiff as the non-moving party.

As a final matter, Union Pacific contends Plaintiff's Ninth Claim for *Respondeat Superior* liability fails to state a claim.  Plaintiff does not respond to this argument and, therefore, it is deemed confessed.  Further, as this Court has discussed, case authority does not support such a claim.

The Court now turns to Simmons' Motion.  Simmons first contends he is entitled to qualified immunity.  Qualified immunity may be raised in a motion to dismiss or for judgment on the pleadings since it is intended "to give government officials a right, not merely to avoid 'standing trial,' but also to avoid the burdens of 'such pretrial matters as discovery. . . .'" Weise v. Casper, 507 F.3d 1260, 1269 (10th Cir. 2007) quoting Behrens v. Pelletier, 516 U.S. 299, 308 (1996).  When qualified immunity is raised in connection with a motion to dismiss rather than a motion for summary judgment, "the court is asked to decide whether, assuming the allegations of the complaint are true, the defendant[] [is] entitled to dismissal as a matter of law." Id. at 1270.  It is a legal rather than a factual question. Id.

Plaintiff alleges Simmons used excessive force in effectuating her arrest. "[T]he excessive force inquiry evaluates the force used in a given arrest or detention against the force reasonably necessary to effect a lawful arrest or detention under the circumstances of the case." Romero v. Story, 672 F.3d 880, 890 (10th Cir. 2012). Again, the video of the incident reveals a considerable use of force under the circumstances presented. Objective evaluation of the video could lead a person to conclude Simmons exceeded the force reasonably necessary to effect Plaintiff's arrest. The video does not depict Plaintiff placing hands upon Simmons prior to Simmons grabbing Plaintiff and eventually taking her to the ground. Clearly, Plaintiff's constitutional rights under the Fourth and Fourteenth Amendments were clearly established to preclude Simmons from using excessive force in effectuating an arrest or detention. He is, therefore, not entitled to qualified immunity at this stage of the proceedings.

Simmons next asserts he was within his jurisdiction when he arrested Plaintiff. Plaintiff contends the arrest was for assault, which occurred on property outside of his jurisdiction. Plaintiff has sufficiently plead this claim to allow it to proceed. This claim requires factual inquiry into where Simmons was located when he arrested Plaintiff and a legal analysis of the parameters of Simmons' unique jurisdiction as an officer for Union Pacific. This Court would also point out that Plaintiff does not appear to state

a separate constitutional claim for extra-jurisdictional arrest but raises the issue in the body of the factual statements supporting the Amended Complaint. Since Simmons recognizes it as a separate claim, this Court addresses the argument.

Simmons also seeks dismissal of the false arrest constitutional claim which requires an absence of probable cause that Plaintiff had committed a crime. Kaufman v. Higgs, 697 F.3d 1297, 1300 (10th Cir. 2012). This constitutional claim could be distinguishable and separate from the state law false arrest claim. The video filed with the Amended Complaint does not expressly indicate Plaintiff assaulted Simmons prior to his arrest. Plaintiff has plead a sufficiently plausible claim for a constitutionally deficient arrest. Again, this claim is not separately set out as one of the nine claims Plaintiff asserts. However, Simmons seeks the dismissal of the claim possibly brought about by the confusing arrangement of the allegations made in the Amended Complaint. To the extent Plaintiff has asserted such a claim, it will not be dismissed at this stage.

Simmons also realleges he did not use excessive force. As previously stated herein, Plaintiff has stated a sufficiently plausible claim for excessive force.

Simmons challenges Plaintiff's claim for malicious prosecution, contending that a lawful arrest disposes of the claim. Since the probable cause giving rise to the arrest is subject to differing views, the malicious prosecution claim will survive this

Motion.

The remaining assertions by Simmons - that the state law false imprisonment/false arrest claims are barred by the statute of limitations and that Simmons is entitled to judgment on the negligence claims - have been addressed in connection with Union Pacific's Motion. The false imprisonment/false arrest state law claims will be dismissed and the negligence claims will survive.

IT IS THEREFORE ORDERED that Defendant Union Pacific's Motion for Judgment on the Pleadings (Docket Entry #35) is hereby **GRANTED**, in that Plaintiff's state law false imprisonment/false arrest claims (Third Claim for Relief) and *respondeat superior* claim (Ninth Claim for Relief) are hereby **DISMISSED WITH PREJUDICE**. The remainder of the Motion is hereby **DENIED**.

IT IS FURTHER ORDERED that Defendant Simmons' Motion for Judgment on the Pleadings (Docket Entry #34) is hereby **GRANTED**, in that Plaintiff's state law false imprisonment/false arrest claims (Third Claim for Relief) are **DISMISSED WITH PREJUDICE**. The remainder of the Motion, including Simmons' claim for qualified immunity, is hereby **DENIED**.

IT IS FURTHER ORDERED that the stay of discovery imposed by the minute order entered July 12, 2013 is hereby **VACATED**.

IT IS FURTHER ORDERED that a telephonic Scheduling Conference shall be conducted in this case on **MAY 29, 2014 at 2:15 p.m.** The parties shall prepare and file an Amended Joint Status Report no later than **MAY 23, 2014.**

IT IS SO ORDERED this 28th day of April, 2014.

Kimberly E. West
United States Magistrate Judge
Eastern District of Oklahoma